IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



CITY OF DALLAS, TEXAS,

    Plaintiff,

v.

H. DALE HALL et al.,

    Defendants.

_____

THE TEXAS WATER
DEVELOPMENT BOARD,

    Plaintiff,

v.

THE UNITED STATES DEPARTMENT
OF THE INTERIOR et al.,

    Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

CIVIL ACTION NO.
3:07-CV-0060-P

Consolidated with:

Civil action No. 3:07-CV-0213-P

## MEMORANDUM OPINION AND ORDER

Now before the Court are (1) the City of Dallas's Motion to Supplement the Administrative

Record and for Discovery, filed April 9, 2007; (2) the Texas Water Development Board's Motion to

Supplement Administrative Record, filed April 10, 2007; (3) the Texas Water Development Board's

Motion for Discovery, filed April 10, 2007; (4) the Texas Water Development Board's Second

Motion to Supplement Administrative Record, and for Enlargement of Time to File, filed May 30,

2007; (5) the Texas Water Development Board's Motion for Leave to File Supplemental Complaint,

filed June 20, 2007; (6) the City of Dallas's Request to Add Recently-Received FOIA Documents to

1

the Documents Supplementing the Administrative Record, filed July 19, 2007; and (7) the Texas Water Development Board's Supplemental Brief in Support of Motion to Supplement Administrative Record, and Motion for Enlargement of Time to File, filed August 3, 2007.

After careful consideration of the Parties' briefing and the applicable law, the Court hereby (1) GRANTS in PART the City of Dallas's Motion to Supplement the Administrative Record and for Discovery; (2) GRANTS in PART the Texas Water Development Board's Motion to Supplement Administrative Record; (3) DENIES the Texas Water Development Board's Motion for Discovery; (4) GRANTS the Texas Water Development Board's Motion for Enlargement of Time to File and DENIES its Second Motion to Supplement Administrative Record; (5) GRANTS the Texas Water Development Board's Motion for Leave to File Supplemental Complaint; (6) GRANTS in part the City of Dallas' Request to Add Recently-Received FOIA Documents to the Documents Supplementing the Administrative Record; and (7) DENIES the Texas Water Development Board's Supplemental Brief in Support of Motion to Supplement Administrative Record, and Motion for Enlargement of Time to File, filed August 3, 2007.

## I.

On March 20, 2007, the Court entered an agreed order instructing the Federal Defendants to file the Administrative Record ("Record") in this case by March 26, 2007. The Court gave Plaintiffs fourteen (14) days after the Record was filed to file any motions regarding the sufficiency of the Record, supplementation of the Record, or requests for traditional discovery. (Court Order of Mar. 20, 2007.)

The Federal Defendants filed the Record and subsequently, the City of Dallas (the "City") and the Texas Water Development Board (the "State") filed motions requesting that the Court allow

supplementation of the Record and traditional discovery.[1] Additionally, the Federal Defendants filed

a notice with the Court on April 6, 2007 seeking to withdraw certain documents from the Record.

On July 6, 2007, the Federal Defendants filed another notice/motion with the Court seeking to add

certain documents to the Record. On May 30, 2007, the State filed a supplemental motion to add

certain documents to the Record. On June 20, 2007, the State filed a motion for leave to amend its

Complaint. On July 19, 2007, the City filed a motion seeking to add recently-received FOIA

documents to its original motion to supplement the Record. These motions are now before the Court

for determination.

## II.

A brief overview of the statutes and case law creating the administrative framework and rules

of judicial review helps to understand this case. After discussion of these legal principles, the Court

will turn to its analysis and discussion of the pending motions. For a detailed discussion of the facts

of this case, *see* this Court's order on the Federal Defendants' motions to dismiss.

### A.     National Environmental Policy Act.

1. Introduction.

The National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4321-4361 (1982),

requires all federal agencies to analyze the environmental impacts of their projects. *See Spiller v.*

*White*, 352 F.3d 235, 237 (5th Cir. 2004). To comply with NEPA, an agency must prepare certain

---

[1]    Local Rule 7.2(d)(2) requires a party filing a brief in excess of ten (10) pages to include a table of
authorities therewith. The State did not include a table of authorities with its brief to its motion to supplement the
Record. The Court expects the State to comply with the Local Rules of the Court with respect to future briefing.
Additionally, the Federal Defendants, apparently in an effort to circumvent Local Rule 7.2(c)'s page-limit
requirement, use 1½ line spacing instead of the standard double-spacing. In the future, the Court expects all briefs
filed in this case to utilize 12-point font and double-spacing in the text.

documents that reflect its consideration of these environmental factors. *See* 42 U.S.C. § 4332(C).

NEPA cases generally involve charges that an agency's preparation of the NEPA documents has

been inadequate. *See* Susannah T. French, *Judicial Review of the Administrative Record in NEPA*

*Litigation,* 81 Cal. L. Rev. 929, 929 (July 1993).

2. NEPA Requirements.

NEPA was established to promote the noble national policy of encouraging "productive and

enjoyable harmony between man and his environment." *See Coliseum Square Assoc., Inc. v.*

*Jackson*, 465 F.3d at 215, 223 (5th Cir. 2006.) The act was intended to reduce or eliminate

environmental damage and to promote the understanding of the ecological systems and natural

resources important to the United States. *See id.*; *O'Reilly v. U.S. Army Corps of Eng'rs*, 477 F.3d

225, 228 (5th Cir. 2007).

"NEPA operates to prevent a federal agency from taking any major action before that agency

has considered the environmental effects of that action." *Citizen Advocates for Responsible*

*Expansion, Inc. (I-CARE) v. Dole,* 770 F.2d 423, 431 (5th Cir. 1985) (citing H.R. Conf. Rep. No.

765, 91st Cong. 1st Sess. (1969), *reprinted in* 1969 U.S. Code Cong. & Ad. News 2751, 2756, 2757

& 2771) (emphasis in original). The preeminent purposes of the process are to cause federal

agencies to take a "hard look" at the environmental consequences of a proposed project, consider

viable alternatives to the method chosen to achieve the aims of the project, and endeavor to minimize

adverse environmental consequences of the proposal. *See id.* at 431-32. NEPA is also designed to

perform an educational function. *See* French, *supra*, at 929. NEPA's basic premise is that a better

knowledge base will cause agencies to make less environmentally-damaging decisions. *See id.*

"Simply by focusing the agency's attention on the environmental consequences of a proposed

project, NEPA ensures that important effects will not be overlooked or underestimated only to be discovered after resources have been committed or the die otherwise cast." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989).

Despite these substantive goals, NEPA itself does not mandate particular results in order to accomplish these ends. *See Coliseum Square,* 465 F.2d at 224; *O'Reilly,* 477 F.3d at 228. Rather, NEPA imposes procedural requirements on federal agencies, requiring them to analyze the environmental impact of their proposals and actions. *See Coliseum Square,* 465 F.2d at 224. Thus, "at base, NEPA is a procedural statute intended to prevent uninformed agency action. It does not require substantive, environmentally friendly results, merely that adverse environmental effects of a proposed action are identified and evaluated. An agency action resulting in harmful environmental effects will not be overturned where the agency has considered the environmental impact of that action and then determined that other benefits outweigh them." *Ohio Valley Envtl. Coal. v. U.S. Army Corps of Eng'rs,* 479 F. Supp. 2d 607, 625 (S.D. W.Va. 2007) (citing *Robertson,* 490 U.S. 350-51). "NEPA merely prohibits uninformed - rather than unwise - agency action." *Robertson,* 490 U.S. at 351.

To this end, NEPA requires that federal agencies prepare a detailed Environmental Impact Statement ("EIS") for "every recommendation or report on proposals for legislation and other major federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). The EIS must describe the environmental impact of the proposed action, any adverse environmental effects that cannot be avoided should the proposal be implemented, alternatives to the proposed action, and any irreversible and irretrievable commitments of resources that would be involved in the proposed action should it be implemented. *See* 42 U.S.C. § 4332(2)(C).

5

If an agency is uncertain whether the impacts of a project are significant, an agency may prepare a more limited document, called an Environmental Assessment ("EA"). *See Coliseum Square*, 465 F.3d at 223 (allowing EA if the proposed action is categorically excluded from the requirement to produce an EIS or does not clearly require the production of an EIS). An EA, as opposed to an EIS, should be a "concise public document . . . that serves to . . . [b]riefly provide sufficient evidence and analysis for determining whether to prepare an [EIS]." 40 C.F.R. §1508.9(a). An EA should consider both quasi-political factors (including the unique characteristics of the area and the controversy surrounding the decision) and scientific questions (such as the uncertainty of the environmental effects and the cumulative impact of the project). *See* 40 C.F.R. § 1508.27.

If, after completing the EA, the agency determines that the impacts of the project are not significant, the agency may issue a 'finding of no significant impact' (FONSI), which briefly presents the reasons why the proposed agency action "will not have a significant impact on the human environment." 40 C.F.R. § 1508.13; *see id.* § 1508.27.

### 3. Judicial Review in NEPA Cases.

Legal challenges to agency decisions under NEPA, such as this one, often involve claims that an agency should have prepared an EIS. *See* French, *supra*, at 947. These claims in turn often lead to quasi-factual disagreements over whether the agency has properly analyzed the relevant impacts on the environment. *See id.* This query requires resolution of whether the environmental impact of a particular action requires further NEPA analysis, which almost always involves complicated scientific determinations, conflicting evidence, and incomplete data. *See id.* at 947-48.

Courts are not authorized to vacate an agency decision under NEPA because it is unwise or will have a negative effect on the environment. *See Strycker's Bay Neighborhood Council, Inc. v.*

*Karlen,* 444 U.S. 223, 227-28 (1980). Instead, a court's scrutiny is limited to determining whether an agency has followed NEPA procedures, *i.e.,* whether an agency has properly prepared, or reasonably failed to prepare, an EIS.

Because NEPA does not contain a provision for determining whether an agency action complies with NEPA's processes, compliance with NEPA is reviewed under the Administrative Procedures Act ("APA"). *See* 5 U.S.C. § 500, *et seq.* (1996).

**B.      Judicial Review of Administrative Decisions.**

1. Record Rule.

Judicial review of administrative decisions under the APA typically has been highly deferential - agencies are deemed to be the key fact-finders, while courts focus on the legality of their actions. *See* French, *supra,* at 930. The Supreme Court has held that while a court may not judge the substantive merits of an agency's decision, it must ensure the agency has taken a "hard look" at the data that is relevant to its final decision. This standard requires a court to make a "thorough, probing, in-depth review" of an agency action. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415 (1971).

According to the text of the APA, a court is to set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706. In order for a court to resolve whether an agency's decision is violative of the APA, the agency must prepare a reviewable administrative record for the court.

The APA states that a court may "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Although the statute does not explicitly state that a court may not look beyond the record to review an agency action, it is generally accepted that judicial review is

ordinarily confined to the administrative record. *See Overton Park*, 401 U.S. at 420. The Supreme

Court has ruled that judicial review is to be based on the "full" administrative record that was before

the agency at the time of the decision. *See id.*; *Florida Power & Light Co. v. Lorion*, 470 U.S. 729,

743-44 (1985). While, on its face, the APA's simple reference to the "whole record" provides courts

with little guidance as to what materials they are to review, a substantial body of case law has helped

to develop standards for what constitutes the "whole record."

First and most basically, a complete administrative record should include all materials that

"might have influenced the agency's decision," and not merely those upon which the agency relied in

its final decision. *Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143. F Supp. 2d 7, 12 (D.D.C.

2001). Thus, the whole record should consist of the full administrative record that was before all

decision makers at the time of the decision. *See Bar MK Ranches v. Yeutter*, 994 F. 2d 735, 739

(10th Cir. 1993). The complete administrative record consists of all documents and materials

directly or indirectly considered by the agency and includes evidence contrary to the agency's

position. *See id; Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 33 (N.D. Tex. 1981)

(Higginbotham, J.). Conversely, matters not considered by the agency are generally outside the

record, are legally irrelevant, and are therefore not discoverable. *See Exxon*, 91 F.R.D. at 33.

An agency may not unilaterally determine what constitutes the administrative record. *See

Bar MK Ranches*, 994 F.2d at 739-40. However, the designation of the administrative record, like

any established administrative procedure, is entitled to a presumption of administrative regularity.

*See id.* at 740. The court assumes the agency properly designated the administrative record absent

clear evidence to the contrary. *See id.*

The Supreme Court has long held that expansion of the administrative record is appropriate

in certain cases where the record is insufficient, such as when the record submitted fails to explain the basis for the agency's action, thereby frustrating judicial review. *See Overton Park v. Volpe,* 401 U.S. 402 (1971). In *Camp v. Pitts,* 411 U.S. 138, 142-43 (1973), the Supreme Court endorsed off-the-record review of agency actions and held that where an agency's reasons for its actions are not sustainable from the record, the agency's action must be vacated and remanded to the agency. In *Florida Power and Light Co. v. Lorion*, the Court upheld this trend by noting that if the administrative record does not support the agency action, "if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." 470 U.S. 729, 744 (1985).

 2. Judicially-Created Exceptions to the Record Rule.

 Courts have recognized exceptions to the general rule that judicial review of a federal agency's decision is limited to the record already in evidence. For example, courts allow extra-record evidence: (1) when agency action is not adequately explained in the record before the court; (2) when looking to determine whether the agency considered all relevant factors; (3) when a record is incomplete; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues; (5) when evidence arising after the agency action shows whether the decision was correct or not; (6) in certain NEPA cases; (7) in preliminary injunction cases; and (8) when an agency acts in bad faith. *See, e.g., Davis Mountains Trans-Pecos Heritage Ass'n v. U.S. Air Force,* 249 F. Supp. 2d 763, 776 (N.D. Tex. 2003) (Cummings, J.); *Amfac,* 143. F. Supp. 2d at 11; *see also* Frank B. Cross, NEPA Law and Litigation § 4:36 (2007).

 When a court is trying to determine whether an agency action is adequately explained in the

record or whether an agency has considered all the relevant factors, the record itself will reveal whether non-record review is merited. *See Amfac*, 143. F. Supp. 2d at 12. "Thus, in these circumstances, a party seeking non-record review has everything at its disposal, (*i.e.*, the record) needed to successfully urge the Court to look beyond the record." *Id.*

A different situation is presented when analyzing the completeness of the record and the good faith behind a decision - these can only be grasped by looking beyond the record itself. *See Amfac*, 143. F. Supp. 2d at 12; *see also Bar MK Ranches*, 994 F.2d at 740. For example, courts have held that plaintiffs are entitled to an opportunity to determine whether any other documents that are properly part of the administrative record have been withheld. *See Pension Benefit Guar. Corp. v. LTV Steel Corp.*, 119 F.R.D. 339, 341 (S.D.N.Y. 1988). Courts have also permitted litigants to supplement the administrative record with additional material that explains the administrative officials' basis for their actions. *See id.* "Thus, in these circumstances, the only way a non-agency party can demonstrate to a court the need for extra-record judicial review is to first obtain discovery from the agency." *Amfac*, 143. F. Supp. 2d at 12. In other words, an adequate record can sometimes only be determined "by looking outside the [record] to see what the agency may have ignored." *Davis*, 249 F. Supp. 2d at 776 (citing *County of Suffolk v. Sec'y of the Interior*, 562 F.2d 1368, 1384 (2d Cir. 1977)). In those cases, the administrative record may be "supplemented, if necessary, by affidavits, depositions, or other proof of an explanatory nature." *Davis*, 249 F. Supp. 2d at 776. "'The new material, however, should be explanatory of the decisionmakers' action at the time it occurred. No new rationalizations for the agency's decision should be included.'" *Id.* (citation omitted).

In NEPA cases in particular, courts routinely look outside the record when reviewing agency

compliance. The cornerstone case for the NEPA exception to the record rule is *County of Suffolk v. Secretary of the Interior*, which held that a primary function of the court is to insure that the information available to the decisionmaker includes an adequate discussion of environmental effects and alternatives, which can sometimes be determined only by looking outside the administrative record to see what the agency may have ignored. 562 F.2d 1368, 1384 (2d Cir. 1977). In NEPA cases where the plaintiff alleges that an agency decision has failed to consider a serious environmental consequence, failed adequately to discuss some reasonable alternative, or otherwise "swept stubborn problems or serious criticism . . . under the rug," discovery may be permissible. *Id.* Evidence will be admitted only if it tends to show either that the agency's research or analysis was clearly inadequate or that the agency improperly failed to set forth opposing views widely shared in the relevant scientific community. *See id.* at 1385. Moreover, it is the duty of the agency, not the challengers, to present evidence in the first instance for incorporation into the reports - the primary and nondelegable responsibility for providing analysis lies with the agency. *See id.* The *County of Suffolk* case laid the groundwork for wide acceptance of the plaintiffs' use of extra-record evidence such as evidentiary trials and hearings, expert witnesses, and expert affidavits and other evidentiary documents for challenging agency's compliance with NEPA. *See* French, *supra*, at 950. In fact, commentators have stated that the Fifth Circuit in particular "seem[s] to accept extra-record evidence in NEPA cases almost as a matter of course." *See id.* at 951.

3. Obtaining Discovery in APA Cases.

"To obtain discovery from an agency in an APA case, a party must overcome the standard presumption that the 'agency properly designated the Administrative Record.'" *Amfac,* 143. F. Supp. 2d at 12 (citing *Bar MK Ranches,* 994 F.2d at 740). That is, a party must provide good reason

11

to believe that discovery will uncover evidence relevant to the court's decision to look beyond the record. *See id.* "Thus, a party must make a significant showing - variously described as 'strong', 'substantial', or 'prima facie' - that it will find material in the agency's possession indicative of bad faith or an incomplete record." *Amfac*, 143. Fupp. 2d at 12 (citations omitted).

### 4. Burden of Proof in APA Cases.

It is well-established that the burden of proving that an agency decision was arbitrary or capricious generally rests with the party seeking to overturn the agency decision. *See Davis*, 249 F. Supp. 2d at 776 (citing *Sierra Club v. Morton*, 510 F.2d 813, 818 (5th Cir. 1975) (holding that plaintiffs bear the burden of showing by a preponderance of the evidence that defendants have failed to adhere to the requirements of NEPA)). In determining whether an agency's action was arbitrary or capricious, the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. *See Davis*, 249 F. Supp. 2d at 776-77. An agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." *Id.* at 777 (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

However, "the Court is not allowed to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). "It is also well established that a court may not set aside an agency's action . . . because the court might reach a different result." *Davis*, 249 F. Supp. 2d at 777.

### III.

**A. Federal Defendants' Effort to Remove Documents from the Record.**

On April 26, 2007, the Federal Defendants filed a Notice of Correction to Administrative

Record in which they seek to withdraw two documents (AR 2793-95) from the Record they submitted because the documents allegedly post-date the final administrative decision to acquire the easement. The Federal Defendants maintain that the Record should end on the date FWS acquired and accepted the deed of conservation easement.

The State objects to the withdrawal of these documents because, it argues, the Record is unclear as to when the deed was finally accepted by FWS. (State Mot. to Supplement at 22.) Moreover, the State argues that these documents are probative of that issue. In fact, the State maintains that not only should these documents be retained, but the Record should be expanded to include all relevant documents though the date of final acceptance.

As the Court discusses *infra*, the Record does not adequately explain FWS's process for accepting the deed. Thus, the Court hereby SUSTAINS the State's objection to the Notice of Correction and will retain those two documents as part of the Record. Furthermore, the Court hereby directs FWS to supplement the Record to include all materials and documents relating to (1) the DOI Solicitor's instruction that the deed must be accepted by the Secretary of the Interior or his authorized representative; (2) FWS's and the Solicitor's Office's subsequent conclusion that the FWS Regional Director could accept the easement donation and no higher level approval was required; (3) DOI's internal donation guidelines and FWS's decision that it did not need to comply with DOI's internal donation guidelines; (4) the reasons FWS had not incorporated relevant DOI guidelines into FWS policies; (5) the statement to the press that the deed was "sufficient" in December 2006. (City App. Ex. B.)

Once the date of acceptance is ascertained, the Court hereby instructs the Federal Defendants to supplement the record with all relevant documents through that date should that date be

subsequent to August 23, 2006 (the date the deed was filed in Anderson County, Texas).

**B.      State's Motion to Supplement the Administrative Record.**

On April 10, 2007, the State filed a motion to supplement the administrative record. The motion became ripe on April 27, 2007. On May 30, 2007, the State filed a second motion to supplement the Record. That motion became ripe on July 3, 2007. On August 3, 2007, the State filed yet another motion asking the Court to consider supplemental briefing on its original motion. The State bases that motion on the fact that it "addresses material filed after the deadline for filing the administrative record and thus, could not have been filed before the deadline." (State Mot. to Supp. at 10.)

In its original motion to supplement the administrative record, the State argues that the Record is incomplete and moves to supplement it by adding two types of documents: those documents that were considered by FWS and those documents that were not considered by FWS in its decision-making process.

In a case like this, where an agency has presented a certified copy of the complete administrative record, "the court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary." *MK Ranches*, 994 F.2d at 740. Despite this assumption, however, a party is allowed to conduct discovery and/or complete or supplement the record where it demonstrates there is a reasonable basis to believe that materials considered by agency decisionmakers are not in the record. In order to provide such a "reasonable basis," a party must do more than simply allege that the record is incomplete. *See Defenders of Wildlife v. Dalton*, No. 00-02-00060, 2000 WL 1562928, at *3 (C.I.T. 2000). Rather, a party must provide the court with reasonable, non-speculative grounds to believe that materials considered in the decision-making

14

process are not included in the record. *See id.*

1. Documents in Possession of Federal Defendants.

    a. *Documents Not in Dispute.*

The State requests that the Federal Defendants be required to supplement the Record by providing certain documents believed to be in their possession or control. The Federal Defendants reviewed the State's list of documents and acknowledged that some of those documents were inadvertently omitted from the Record. (Resp. to State Mot. to Supp. at 1.) They have committed to supplement the Record with those documents. Therefore, the Court hereby GRANTS the State's Motion to Supplement with respect to (a) the Texas Bottomland Hardwood Concept Plan (FWS 1985); (b) Service NEPA Guidelines; (c) DOI Donation Guidelines; (d) FWS Donation Guidelines used by FWS at the time the donation was accepted in August 2006; (e) March 2006 Fastrill Reservoir Preliminary Yield and Feasibility Study, Draft; (f) August 17, 2006 letter from Joe Crutcher to Dale Hall; and (f) certain FWS emails offered in State's Supplement to Administrative Record (AR 1009-1048).

The Federal Defendants object to the Court's supplementation of the Record with any other documents. In its reply brief, the State explains that only the following documents remain in controversy: (Reply to State Mot. to Supp. at 2.)

    b. *Documents Related to Executive Order.* (State Mot. to Supp. at 9.)

The State seeks to include all documents in the Federal Government's possession "showing the Federal Defendants' efforts to comply with the [Executive Order] . . . or that should have been created pursuant to the [Executive Order] in preparing for the Refuge decision." (Reply at 2.) Count VIII of the City's Complaint asserts a NEPA claim for violation of certain executive orders. That

claim has been dismissed by Court order. Additionally, the State has alleged that the Record is incomplete, but has failed to provide the Court with reasonable, non-speculative grounds to believe that such materials were considered by the Federal Defendants in preparing for the Refuge decision, but were omitted from the Record. Therefore, any request to supplement the Record with documents relating to compliance with executive orders is hereby DENIED as MOOT.

c. *Acceptance of Deed.* (State Mot. to Supp. at 10.)

The State seeks to add all documents showing final acceptance of the deed of conservation easement by the Secretary of the Interior or his authorized representative.[2] The State notes that the Record indicates that this final acceptance was required to effect acceptance of the easement. (AR 2798,2816, 2592). Yet there are no documents containing such acceptance in the Record.

The Federal Defendants respond by explaining that there was some confusion at FWS regarding how FWS was to formally accept the donation. According to the Federal Defendants' briefing, FWS was initially told that the Secretary of the Interior or his authorized representative must sign the deed for acceptance to be valid. Yet, it was later clarified that FWS's Regional Director could accept the donation and that no higher level of approval was required. "Accordingly, the administrative record concerning the FWS's acquisition is complete." (Defs.' Resp. to State Mot. to Supp. at 14.)

The State argues that the Record "as submitted" does not contain any documents to show that such clarification was made, by whom, or upon what grounds. (State Mot. to Supp. at 10.) However, the Record does contain a memo issued by the Assistant Director of FWS on October 6,

_____

[2] This request also extends to any acceptance signed by the Secretary of the Interior, any documents showing a delegation of authority from the Secretary of the Interior to another official, and any acceptance signed by another official with delegated authority. (State Mot. to Supp. at 10.)

2006 to the Regional Director of FWS explaining that "[t]he direction from the Field Solicitor is clear in that the Regional Director can accept this donation. Therefore, there is no need for higher level approval." (AR 2796.)

The State challenges the usefulness of this memo by explaining first that the memo (dated October 6, 2006) post-dates the date the deed was filed (August 23, 2006). Second, the memo upon which the Federal Defendants rely is the precise document they seek to remove from the Record because it purportedly post-dates the date of acceptance.[3]

The evidence in the Record indicates that it is reasonable to believe that at the time the deed was signed, the Secretary of the Interior was required to effect acceptance thereof. The only evidence that the Field Solicitor changed this rule comes in the form of a self-serving memo drafted after the deed was signed by the Regional Director. For these reasons, the Court concludes that supplementation is appropriate to adequately ascertain the date of final acceptance for purposes of having a complete Record in this case and for the purpose of ascertaining whether the easement is valid.[4]

The Federal Defendants argue that documents concerning FWS's acceptance of the easement are not required for the Court's adjudication of this action because the Court has dismissed the

---

[3] The State also argues that it is unclear by looking at the deed if it was even signed by the Regional Director. No printed name appears on the deed and it appears as though the signature was made "for" the Regional Director. However, the notary public, by signing her name, swears that the signatory was Christopher Todd Jones, Acting Regional Director.

[4] The City has stated that it intends to amend its Complaint to add the allegation that FWS failed to comply with agency policy by failing to obtain approval for acceptance of the easement from the Secretary of the Interior, thereby rendering the deed invalid and causing the Refuge to have not been established. (Request to Add Recently-Received FOIA Documents to the Documents Supplementing the Administrative Record at 3 n.3.) The Court has allowed this amendment by separate order. In anticipation thereof, the Court will allow supplementation of the Record on this issue for the purpose of ascertaining whether the easement is valid.

State's claim to invalidate the conservation easement. (Resp. at 24-25.) The State responds that these documents are relevant to the Refuge decision because the Federal Defendants consider the acceptance of the deed as part of FWS's overall agency decision to establish the Refuge. (Reply at 5-6.) The Court agrees that documents showing how and when FWS accepted the easement are relevant to the determinations of whether the Refuge was established and when a final agency decision was made. In order to ensure a complete Record, the Court will include all documents relating to the Federal Government's acceptance of the easement.

> d. *The 2007 State Water Plan - Texas Water Development Board's Second Motion to Supplement Administrative Record and for Enlargement of Time to File.*

In its Second Motion to Supplement Administrative Record and for Enlargement of Time to File, filed May 30, 2007, the State moves to supplement the Record with a draft of the 2007 State Water Plan that, the State recently discovered, was sent to the Federal Defendants on or soon after August 15, 2006 - which is arguably before the close of the Record. The Court hereby GRANTS the State's motion for enlargement of time to file this motion to supplement the Record and will consider the motion to supplement below.

The Federal Defendants object to the State's attempt to add the 2007 State Water Plan to the Record because (1) it post-dates the agency decision to establish the Refuge and (2) it is irrelevant to the decision to acquire the easement. The Federal Defendants distinguish the two agency decisions at issue here: (1) the final agency approval to establish the Refuge, which occurred on June 11, 2006 and (2) the agency's acquisition of the conservation easement, the exact date of which is in dispute. The Federal Defendants argue that the State has failed to establish that the draft 2007 State Water Plan was provided to or received by FWS decisionmakers prior to the June 11, 2006 approval of

establishment of the Refuge, which is the only decision to which it would be relevant.

There is no doubt that the draft 2007 State Water Plan was sent to FWS after the June 11, 2006 decision was made. Because agency actions must be reviewed based on the record considered by the decision maker at the time it made its decision, the Court denies the State's motion to supplement the Record with the post-decision 2007 State Water Plan. *See State of La. ex rel. Guste v. Verity*, 853 F.2d 322, 327 n.8 (5th Cir. 1988). The State contends in a conclusory fashion that an exception should be made for this document because it falls within several of the exceptions for allowing extra-record evidence. (Reply to Second Mot. to Supp. at 7-8.) However, the State has not established that the draft 2007 State Water Plan is relevant or material to the agency decision to acquire the conservation easement. Therefore, the Court hereby DENIES the State's Second Motion to Supplement the Administrative Record.

### e. *Documents Related to Ultra Vires Acts.*

In its Reply brief to its motion to supplement the record, the State asserts that acquisition of the easement was an *ultra vires* act and therefore, all documents relating to this *ultra vires* act should be added to the record. (Reply to Mot. to Supp. at 6-7.) The State also made this argument in its response to the Federal Defendants' motion to dismiss the State's Seventh Claim for Relief, which has been dismissed by separate order. (Resp. to Mot. to Dismiss at 17-18.) However, as explained *infra*, the Court has granted the State's motion for leave to amend its Complaint to add an Eighth Claim for Relief entitled "*Ultra Vires* Action." Therefore, the Court will allow supplementation of the Record with documents relating to the *ultra vires* acquisition of the easement.

### 2. Documents in Possession of the State.

The State requests that the Court add certain documents to the Record that the Federal

Defendants might not have reviewed or considered as part of their Refuge decision. (Mot. at 15-21.) The Federal Defendants respond by comparing the proffered exhibits with documents already in the record to show they merely duplicate information already before the Court. The State filed its reply on April 27, 2007 and then, on August 3, 2007, sought to file a supplemental brief to add additional argument to its earlier briefing. (*See* State's Supp. Br. in Support of Mot. to Supp. Admin. R. and Mot. for Enlargement of Time to File, filed Aug. 3, 2007.) Because the State had an adequate opportunity to make its arguments in its original briefing, because the State has not provided an adequate reason for granting leave to make additional argument, and because the State's supplemental brief does not add anything new for the Court to consider, the Court hereby DENIES the State's Motion for Enlargement of Time to File supplemental brief.

The documents the State seeks to include illustrate the State and local perspectives on the land at issue and the State and local water conditions, needs, and plans. Reviewing these documents in their original context and from the perspective of the State and local entities is vital to understanding their position. The Court may conclude that these documents should have been considered by the Federal Defendants and the Court will include them in the Record in the interest of completeness and in order to aid the Court in determining whether the Federal Defendants adequately considered factors relevant to their decision. Therefore, the Court hereby GRANTS the State's motion to supplement with respect to (a) Report on Master Plan for Water Supply Reservoirs, dated February 1961; (b) The 1984 State Water Plan; (c) The 1997 State Water Plan; (d) The 2001 Water Plan for Region "I"; (e) The 2006 Water Plan for Region "I"; (f) Minutes of TWDB meeting on 5/16/06 showing State's approval of the 2006 Water Plan for Region "I"; (g) TWDB Resolution 06-52 showing State's approval of the 2006 Water Plan for Region "I"; (h) The 2006 Region "C"

Water Plan showing State's awareness of potential conflict between the Fastrill Reservoir and the proposed Refuge and setting forth details about the proposed reservoir; (i) Minutes of the TWDB Meeting held April 18, 2006 showing State's approval of the 2006 Region "C" Water Plan; (j) TWDB Resolution 06-34 showing State approval of the 2006 Region "C" Water Plan; (l) Affidavit of Samuel V. Vaugh, P.E. of HDR Engineering, Inc., establishing business records exceptions of certain supplemental record documents and identifying attendees and general content of meetings of April 3, 2006, April 20, 2006, May 10, 2006, July 18, 2006. This affidavit is inadmissible for all other facts because those facts are already contained in the Record; (m) color copy of Presentation on Fastrill Reservoir Project and Wildlife & Habitat Preservation Opportunities; (n) Draft of *Fastrill Reservoir Preliminary Yield and Feasibility Study*; (o) Vaugh notes from April 3, 2006 meeting; (p)Vaugh notes from April 20, 2006 meeting; (q) documents and color maps used at meeting of May 10, 2006; and (t) maps of land at issue.

The Court will not allow the State to supplement the Record with respect to certain items because they post-date the decision to establish the Refuge and the State has not established that an exception to the record rule applies to warrant inclusion of the document(s): (k) TWDB meeting minutes showing State approval of the 2007 State Water Plan, dated Nov. 14, 2006; (u) The 2007 State Water Plan; (r) meeting notes and documents used at meeting of July 18, 2006; and (s) letter from Joe Crutcher, President, UNRWA to Dale Hall requesting reconsideration of approval of Refuge.

**D.    City's Motion to Supplement the Administrative Record.**

1. Documents C-1 through C-24.

The City has proffered certain documents it argues should be considered part of the Record.

(City App. Ex. C.)  The Federal Defendants concede that documents C-10, and C-12 through C-16 were inadvertently excluded from the Record.  (Resp. at 11.)  They do not object to the inclusion of document C-9.  The Federal Defendants also maintain that document C-11 is already part of the Record at AR 2080 and 2482.  (Resp. at 11-12.)

With respect to the remaining documents the City seeks to add to the record, the Federal Defendants object to their inclusion because (1) the City has failed to carry its burden to identify and establish that those documents were considered by FWS in the course of its decision-making process and (2) the City has failed to show that any exceptions to the record-review doctrine apply.  (Resp. at 12-15.)

In its reply, the City provides the Court with a detailed chart itemizing each document and the reason(s) why that document was improperly omitted from the Record and/or the bases for admitting each document as extra-record evidence.  (Reply Table 1.)  After a review of the chart and the corresponding documents the City seeks to add, the Court hereby GRANTS the City's motion to supplement the Record with respect to documents C-1 through C-8 and C-24.  Documents C-9 through C-16 are admitted into the Record pursuant to agreement by the Federal Defendants.

The Federal Defendants argue that Documents C-17 through C-23 should not be included in the Record because they post-date the June 11, 2006 decision to establish the Refuge and the August 23, 2006 acquisition of the conservation easement.  Thus, those documents could not have been considered by the Federal Defendants in their decision-making processes.

After reviewing Documents C-17 though C-23, the Court concludes that they post-date the June 11, 2006 decision to establish the Refuge.  Because judicial review is based on the administrative record that was before the agency at the time of the decision, the Court will not

consider those documents.

2. FOIA Documents

On July 19, 2007, the City filed a second motion to supplement the Record to add recently-received FOIA documents that purportedly demonstrate that FWS did not follow agency procedure for acquiring the easement and publishing notice in the Federal Register, that FWS hid the existence of the easement from the public, and that FWS has been negotiating another 2,000-acre donation of land. (Request at 2.)

The Federal Defendants argue that the documents should not be added to the Record because they post-date both FWS's approval of the Refuge and FWS's acquisition of the conservation easement. However, the City takes the position because the Secretary did not sign the deed to the conservation easement, as required by agency policy, the easement is invalid and thus, the Refuge has not been established. As stated *supra*, to the extent there is confusion about the DOI's/FWS's requirement(s) for acquiring land and FWS's compliance with those requirements in this case, the Court will admit to the Record all documents that will assist it in determining what the requirements are and whether the requirements have been met.

First, the City concedes that FOIA Documents 1 and 2 were inadvertently included in its motion to supplement despite already being part of the Record. The Court will deny the request to add FOIA Documents 1 and 2 as moot.

Second, Documents 3, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 18, 19, 21, 22, 23, 26, 27, 32, 34, 35, 38, 39, and 40 will be admitted as extra-record evidence because they fall within the recognized exceptions to the record rule. These documents discuss the DOI's and FWS's policies for accepting title to land and will be admitted to the Record because they constitute post-decision evidence that

will assist the Court in determining whether FWS's acceptance of the deed and establishment of the Refuge was lawful. Likewise, it assists the Court because the agency action of establishing the Refuge is not adequately explained in the Record.

Likewise, FOIA Documents 5, 7, 17, 33 and 36 will be admitted as extra-record evidence because they fall within the recognized exceptions to the record rule. These documents discuss FWS's failure to publish notice in the Federal Register of FWS's decision approving the Refuge proposal. The Court will admit those documents because they constitute post-decision evidence that will assist the Court in determining whether FWS's acceptance of the deed and establishment of the Refuge was lawful.

With respect to FOIA Document 4, the Court will admit this document because it falls within recognized exceptions to the record rule. This document discusses FWS's assessment of the value of the land, which may be contrary to its position and other evidence in the Record. This document will assist the Court in evaluating the lawfulness of the agency action of establishing the Refuge.

The Court will not admit FOIA Document 37 because it is no more indicative of bad faith in FWS's negotiations with the City of Dallas than it is consistent with the fact that FWS did negotiate with the City in good faith, which is the email's stated (and undisputed) reason for Hall's delay in signing off on the EA as Director long after he signed off on it as Regional Director.

The City also seeks to include FOIA Documents 20, 24, 25, 28, 29, 30, 31, and 41, which concern FWS's pre-lawsuit plans to acquire additional lands within the Refuge boundaries. The City contends that these documents should be admitted as extra-record evidence of the potential harm the City would suffer if it does not receive preliminary injunctive relief. Because there is some question as to whether the Refuge has been established, any acquisition of additional lands within the Refuge

boundaries could have a major impact on the City's lawsuit and the future of the Fastrill Reservoir. The Court will include those documents in the Record due to the injunctive nature of this case.

## E.    Motions for Discovery.

### 1.  Discovery on Substantive Claims.

As a general rule, a district court reviewing an agency's decision pursuant to the APA is limited to the administrative record before that agency at the time of its decision, and parties seeking to reverse an agency decision are not commonly allowed to supplement the administrative record through discovery. *See Alabama-Tombigbee Rivers Coalition v. Norton,* NO. CIV. A. CV-01-S-0194-S, 2002 WL 227032, at *3 (N.D. Ala., January 29, 2002). To obtain discovery from an agency in an APA case, a party must overcome the presumption that the agency properly designated the administrative record. *See Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143. F. Supp. 2d 7, 12 (D.D.C. 2001). The party must provide the court with reasonable, non-speculative grounds to believe that materials considered in the decision-making process are not included in the record or the party must make a significant showing that it will find material in the agency's possession indicative of bad faith or an incomplete record. *See id.*

The City argues that the Record is incomplete and that resolution of this case warrants discovery and supplementation of the Record on the issues of whether FWS adequately considered the impacts of the Refuge and whether FWS prejudged the Refuge plan/failed to adequately consider alternatives. The City also seeks discovery on whether FWS had an improper motive/bad faith in acquiring the conservation easement. Finally, the City seeks discovery regarding FWS's compliance with its own policies and procedures with respect to acquiring the easement and publishing the establishment of the Refuge in the Federal Register.

There is no doubt that FWS was aware that it was incumbent upon it to evaluate the impact of the Refuge on the reservoir, if possible. According to the FONSI, "it would be incumbant upon the refuges assessment to consider any combined proposal's cumulative impacts." (AR 1966.) FWS determined it was unable to conduct a formal evaluation of the Refuge's impact on the reservoir due to the "speculative" nature of the reservoir and the fact that it lacked definitiveness in scope and purpose. The FONSI states that "because the Service considered any reservoir project speculative in the short term, and not definitive in its scope and purpose, and because such a project is far beyond the planning horizon for the refuge proposal (*i.e.* 20 years), the Service cannot formally evaluate combined or cumulative impacts or details of how the two projects might interface while not attenuating the mutual goals of each project." (AR 1966.)

The City argues that FWS acted arbitrarily and capriciously in making this finding of "speculativeness." The Court believes it can determine, based solely on the Record before it, whether FWS acted arbitrarily and capriciously in concluding that the reservoir project was speculative and whether FWS acted arbitrarily and capriciously in concluding that it could not have reasonably evaluated the combined environmental impacts of the Refuge and the reservoir at the time of Director Hall's signing of the EA and the FONSI. The City has not demonstrated a need for discovery and extra-record evidence on this issue.

The City also believes that FWS acted arbitrarily and capriciously in deciding to issue an EA and a FONSI instead of an EIS. The Court believes it can determine, based solely on the Record before it, whether FWS violated the APA by choosing not to issue an EIS. The City has not demonstrated a need for discovery and extra-record evidence on this issue.

Therefore, the Court is inclined to solicit briefing from the Parties on the issues of whether

FWS violated the APA by: (1) finding the reservoir was speculative and (2) issuing an EA and a FONSI instead of conducting an EIS. Further, the Court hereby DENIES the City's and the State's motions for discovery without prejudice. If the Court finds that discovery would aid it in resolving these issues, the Court will consider allowing discovery at the appropriate time. Additionally, if, after those issues are resolved, the Court finds that discovery would assist it in resolving any remaining/outstanding issues, the Court will consider allowing discovery at the appropriate time. The Court directs the Parties to attend a status conference in the chambers of Judge Jorge Solis, 1100 Commerce Street, 16th Floor to discuss these issues, the issue of a preliminary injunction, and other issues the Parties wish to discuss on **November 8, 2007 at 9:30 am**.

**F.     State's Motion for Leave to File Supplemental Complaint.**

On June 20, 2007, the State filed a motion for leave to amend its Complaint to add an Eighth Claim for Relief entitled "*Ultra Vires* Action." According to the State, the Supreme Court has held that sovereign immunity is waived for suits alleging a constitutional violation by federal agencies and their officers. (Resp. to Mot. to Dismiss at 17 citing *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949).)

In *Larson*, the Court held that where an officer acts outside his authority (*ultra vires*), either illegally or unconstitutionally, he may be sued individually for specific relief. *See Ala. Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221, 1226 (5th Cir. 1976). The State seeks to amend its Complaint to add a claim against the Federal Defendants for FWS's *ultra vires* act of accepting the donation of the easement.

The Federal Defendants oppose the inclusion of this claim because adding the claim would be futile since it is barred by the Quiet Title Act. (Defs.' Resp. to Mot. for Leave to Amend at 4-5.)

27

However, the Court has held in a separate order that the Quiet Title Act does not bar Plaintiffs' claims concerning acquisition of the easement. The Federal Defendants do not argue any other basis for futility or for refusing to allow leave to amend in this circumstance, and therefore, the Court hereby GRANTS the State's Motion for Leave to File Supplemental Complaint.

However, the Court will not file the State's 3-page "Supplemental Complaint" that accompanies its motion. Instead, the State is hereby instructed to file a complete amended complaint within ten days (10) from the date of this order containing all necessary information and claims.

Therefore, for the reasons stated herein, the Court hereby GRANTS in part the City of Dallas's Motion to Supplement the Administrative Record and for Discovery, GRANTS in PART the Texas Water Development Board's Motion to Supplement Administrative Record, DENIES the Parties' motions for discovery, GRANTS the Texas Water Development Board's Motion for Enlargement of Time to File and DENIES its Second Motion to Supplement Administrative Record, GRANTS the Texas Water Development Board's Motion for Leave to File Supplemental Complaint, GRANTS in part the City of Dallas' Request to Add Recently-Received FOIA Documents to the Documents Supplementing the Administrative Record, and DENIES the Texas Water Development Board's Supplemental Brief in Support of Motion to Supplement Administrative Record, and Motion for Enlargement of Time to File. Further, as stated *supra*, the Court directs the Parties to attend a status conference in the chambers of Judge Jorge Solis, 1100 Commerce Street, 16th Floor on **November 8, 2007 at 9:30 am**.

It is SO ORDERED, this 29th day of October 2007.

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE