IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE CITY OF DALLAS, TEXAS, | § § § | |
| Plaintiff, | § § | Civil Action |
| vs | § § | No. 3:07-cv-0060-P |
| H. DALE HALL, et al., | § § | |
| Defendants. | § § | (Consolidated with |
| | § § | |
| THE TEXAS WATER DEVELOPMENT BOARD, | § § § | |
| | § § | Civil Action |
| Plaintiff, | § § | No. 3:07-cv-0213-K) |
| vs. | § § | |
| THE UNITED STATES DEPARTMENT OF THE INTERIOR, et al., | § § § § | |
| Defendants. | § | |

**AMICUS BRIEF**
**OF THE TEXAS WATER CONSERVATION ASSOCIATION**

The Texas Water Conservation Association ("TWCA") files this brief as amicus curiae in support of the motions for partial summary judgment of Plaintiffs Texas Water Development Board ("TWDB") and the City of Dallas, Texas ("City") in this case.

The Texas Water Conservation Association ("TWCA") is a statewide association of governmental and private entities that are active and vitally interested in the water resource field. TWCA's membership consists of approximately 400 members, including municipalities, river authorities, water districts and industries, as well as firms and

individuals in the engineering, legal and hydro-geology fields, among other individuals and businesses active in various phases of water supply and development. TWCA's governmental members are responsible for providing public water supplies for most Texans. The broadly stated purpose of TWCA is to foster the development, conservation, protection and utilization of the State's water resources for beneficial use by the citizens of Texas. TWCA is also a forum for developing and recommending water policy initiatives, and it provides a voice for Texas "water interests" on state and federal water issues.

## INTRODUCTION

This case involves the establishment of the Nueces River National Wildlife Refuge ("Refuge") by the United States Fish and Wildlife Service ("USFWS"), that will effectively preclude an important water supply project, the Fastrill Reservoir, sorely needed by the East Texas region and the Dallas-Fort Worth metropolitan area. Plaintiffs have challenged the adequacy of USFWS's compliance with the National Environmental Policy Act of 1969 ("NEPA"),[1] urging that the Environmental Assessment ("EA") issued by USFWS, and an accompanying Finding of No Significant Impact ("FONSI"), are deficient and do not comply with the requirements of NEPA. In particular, Plaintiffs assert numerous failures of USWFS to comply with NEPA in issuing the EA and the associated FONSI; and that, therefore, USFWS's failure to have conducted a full Environmental Impact Statement ("EIS") process is a violation of NEPA.

The parties have briefed the issues extensively, each party having filed a motion or cross-motion for partial summary judgment on the NEPA issues, filed briefs in support

---

[1] 42 U.S.C. §§ 4321 et seq.

2

of those motions and briefs replying to the responsive briefs of the party(ies) opposing those motions or cross-motions.[2] The purpose of this amicus brief is not to repeat, rehash or oppose the precise legal arguments advanced by the parties, which have been discussed in detail. Instead, it is to urge the Court to take a step back from the legal wrangling and view the case from a perspective that recognizes the underlying purpose of NEPA, namely, as a "national policy to encourage productive and enjoyable harmony between man and his environment."[3] If it does so, the Court will recognize that, on the record presented, USFWS has not taken the objective "hard look"[4] that NEPA demands.

Instead, the record reveals a cynical approach to the conduct of the EA and the issuance of the FONSI – notwithstanding numerous factors recognized in USFWS's own regulations as applicable to trigger the requirement to perform an EIS; notwithstanding actual knowledge by USFWS that establishment of the Refuge as this location likely would have the effect of eliminating the Fastrill Reservoir project and that there are doubts about the existence of a feasible substitute project site; and notwithstanding the clear need in the future for such a reservoir to supply water to the region and, among others, the City of Dallas.

Whatever else is revealed by the back and forth in the legal arguments in this case, the record reveals that the NEPA process conducted by USFWS was cynically manipulated and not objective. The decision to issue the FONSI and not to conduct a full

---

[2] TWDB and the City have filed motions for partial summary judgment, to which USFWS has filed separate responsive opposing briefs; and TWDB and the City have filed reply briefs in turn. In addition, USFWS has filed a cross-motion for summary judgment, to which TWDB and the City each have filed responsive opposing briefs, in response to which USFWS has filed reply briefs. Very little is left unsaid.

[3] *E.g.*, *Dept. of Transportation v. Public Citizen*, 541 U.S. 752, 756, 124 S.Ct. 2204, 2209 (2004); *Coliseum Square Ass'n v. Jackson*, 465 F.3d 215, 223-24 (5th Cir. 2006). In implementing that purpose, NEPA requires federal agencies to analyze the environmental impact of their proposals and actions. *Id.*

[4] *E.g.*, *Piedmont Heights Civic Club, Inc. v. Moreland*, 637 F.2d 430, 436 (5th Cir. 1981).

EIS inquiry flaunts the record and the circumstances. The EA and FONSI were arbitrary and capricious, and should be rejected. A full EIS is called for.

## DISCUSSION

As the Refuge is a "major federal action," USWFW was required to conduct a NEPA[5] inquiry. The conduct of an EA was within its discretion.[6] USFWS concluded that a full EIS was not required, and on that basis issued a FONSI.[7] NEPA requires that, in conducting an EA or an EIS, the agency in question must take a "hard look" at the possible environmental effects, both direct and indirect. That "hard look" is supposed to be an objective examination.[8] It was not. The EA should have concluded that an EIS *was* required – because there will be "significant impact on the human environment."[9]

### USFWS regulations require objectivity

USFWS's own regulations provide that, "It is important to be as objective as possible when making a determination on whether to prepare an EIS."[10] The regulation also identifies "criteria to assist in determining the need to prepare an EIS," which include, among others: (i) controversy over environmental effects; (ii) actions with wide-reaching or long-term implications; (iii) exposing existing or future generations to increased safety or health hazards (which includes threats to adequate public water

---

[5] *See* 42 U.S.C. § 4332(2)(C); 40 C.F.R. §1508.18.

[6] *See* 40 C.F.R. §1501.4.

[7] *See, e.g.*, *Dept. of Transportation v. Public Citizen*, 541 U.S. 752, 757, 124 S.Ct. 2204, 2209-10 (2004); *Coliseum Square¸* 465 F.3d at 224 (quoting *Public Citizen*).

[8] *See, e.g.*, *Piedmont Heights*, 637 F.2d at 436. USFWS's own regulations recognize the requirement of objectivity. *E.g.*, U.S. Fish & Wildlife Serv., 550 FW 3 § 3.3(B)(2), at 2-3 (1996), *available at* http://www.fws.gov/policy/550fw3.html.

[9] *See, e.g.*, *Coliseum Square Ass'n v. Jackson*, 465 F.3d 215, 224 (5th Cir. 2006).

[10] 550 FW 3, § 3.3 (B)(2); available at http://www.fws.gov/policy/550fw3.html.

4

supply); (iv) conflicts with substantially proposed or adopted local, regional, state, interstate or federal land use plans or policies, that may result in environmental effects (which includes initiation of planning processes); and (v) *adverse effects on municipal, industrial or agricultural water supply or quality, or major consumptive use or other long-term commitment of water.*[11]

These factors were present in this instance. Given the importance to the region and the City of securing an adequate water supply for the future, any one of them should have been enough to convince USFWS to have performed a full EIS. The failure to do so was not an impartial, objective decision. USFWS' justifications are not predicated on scientific objectivity but on finely-nuanced legal arguments that avoid the underlying issue: The FONSI was not based on a hard *objective* look.

**Events reflects bias and manipulation**

The record reveals a sequence of events and actions by USFWS (summarized in the Appendix) that belies the assertion that USFWS' EA represents the required objective "hard look." It reveals that USFWS not only disregarded the important role the proposed Fastrill Reservoir project was to play in state, regional and local water supply planning for the City and others, but also that there were other, likely equally appropriate sites for a refuge that appear not to have been adequately considered, in what seems to have been a rush to get this particular Refuge in place.

Instead of the required objective "hard look," USFWS appears to have engaged in a cynical and purposeful avoidance of what NEPA demands. It did so in an apparently intentional rush to establish the Refuge in this particular location, knowing that doing so

---

[11] 550 FW 3, § 3.3(B)(3)(a), (c), (e), (f), (i) (emphasis added). DOI regulations require an EIS for establishing a refuge. *See* 516 DOI DM6, DM8.7, *available at* 62 Fed.Reg. 2375, 2382 (Jan. 16, 1997).

5

would effectively preclude the Fastrill Reservoir project, and even though other locations equally desirable or even preferable for the refuge may be available. It failed to work with Plaintiffs as it represented it would, to explore alternative sites for the refuge that might accommodate both the goals of establishing a refuge and of securing adequate water supplies for the future. It relied on stale scientific information and outdated studies, the inadequacy of which its own employees have recognized. It effectively disregarded that the proposed Fastrill Reservoir project was an important element of Texas statewide and regional water resource planning, despite having actual knowledge that the project had been being considered by the State since at least 1981; Dale Hall himself acknowledged in February 2005 that the Fastrill Reservoir project "planning and approval" was "underway."[12] USFWS dismissed the City's formal adoption of the Fastrill Reservoir project on March 9, 2005 – before the release of the draft EA for comment, and well before the EA and FONSI were issued on July 28, 2005 – based on an unsupported finding that the State's 50-year water resource planning horizon is too long to require NEPA consideration. USFWS's own internal communications, discussed by the Plaintiffs at length, establish that USFWS apparently was going to establish this Refuge in this location, regardless.

**USFWS ignored the conflict with the proposed Fastrill Reservoir project and did not seriously consider refuge alternatives**

USFWS knew – before it issued the EA for public comment, and certainly before it issued the FONSI[13] – that there were but limited possible locations in the region for a

---

[12] AR0574.

[13] Apparently, although comments were submitted on the EA by the City and by the Upper Neches River Municipal Water Authority ("UNRMWA"), no revised or final EA was issued, merely the FONSI.

6

reservoir project, and that establishing the Refuge at this location would "intersect" and conflict with the Fastrill Reservoir project location.[14] The clear conclusion is that USFWS knew that a refuge at this location would preclude the Fastrill Reservoir project, but the Draft EA's discussion of the socioeconomic effects of doing so did not include consideration of the effects on State and regional water supply planning.[15]

Alternatives exist for apparently suitable refuge sites. Some may even be superior to the Refuge location.[16] Giving meaningful consideration to alternative sites before precluding the Fastrill Reservoir project is especially important considering that there already is substantial protected acreage in the region.[17]

**USFWS knew about but dismissed the State's planning process**

At the time it issued the EA and the FONSI, USFWS knew the Fastrill Reservoir site was one of only a few remaining suitable reservoir site in the region, and had been proposed by the State's water planning process for East Texas[18] and by the City, which formally adopted the project on March 9, 2005,[19] well before the FONSI was approved.

USFWS rejected consideration of those plans in its decision to issue the FONSI as "speculative" and justified this refusal to consider them on the basis that the state 50-year

---

[14] "Potential conflict" (Briefing Statement for Deputy Ass't Secretary for Fish and Wildlife, March 11, 2005) [AR2962]; "intersect" (December 2004 USFWS status report) [AR0622]

[15] AR1185.

[16] *E.g.*, AR0185, AR0189, AR0226-29, AR0272. *See* discussion in City's Memorandum in Support of Its Motion for Partial Summary Judgment (Doc. 97) at 33-39; TWDB's Memorandum in Support of Its Motion for Partial Summary Judgment (Doc. 97) at 24-26.

[17] TWDB0205.

[18] 2001 East Texas (Region I) Regional Water Plan; TWDB's 1984 "Water for Texas III" plan. [TWDB0084-133]

[19] AR1899.

planning horizon was too long, and that NEPA requires consideration only of plans out to the planning horizon *of the proposed refuge* (20 years).[20] This decision was itself arbitrary and capricious. USFWS' argument here is in effect that "we can move faster than you, so we win."

**Federalism and comity require more**

Where state water rights and water supplies are involved, federalism and comity considerations counsel that the federal government must respect state water law and state processes. In *California v. United States*,[21] the U.S. Supreme Court noted that "[p]rinciples of comity and federalism . . . are as a legal matter based on the Constitution of the United States, statutes enacted by Congress, and judge-made law."[22] *California v. United States* involved application of the Reclamation Act of 1902, in which the federal government sought a declaratory judgment that it might impound whatever unappropriated water was necessary for a federal reclamation project – a new dam and reservoir – without complying with state law.[23] The Court reviewed the history of water use in the arid west, the legislative history of the Reclamation Act, the federal agency's own regulations, and the history of other, subsequent acts,[24] and concluded that the Reclamation Act required the federal government to respect and comply with state water law. "While later Congresses have indeed issued new directives to the Secretary, they

---

[20] AR1965. The FONSI asserted that USWFS had no obligation to consider planning for the Fastrill Reservoir project "because such project is far beyond the planning horizon *for the refuge proposal*." [AR2971; emphasis added] Yet the Refuge will be permanent, so this logic is, at best, confusing.

[21] *California v. United States*, 438 U.S. 645, 98 S.Ct. 2985 (1978).

[22] 438 U.S. at 648, 98 S.Ct. at 2987.

[23] *See, e.g.*, 438 U.S. at 645, 98 S.Ct. at 2986.

[24] *See, e.g.*, 438 U.S. at 674-79, 98 S.Ct. at 3000-3003.

8

have consistently reaffirmed that the Secretary should follow state law in all respects not directly inconsistent with these directives."[25]

Although *California v. United States* was a Reclamation Act case and therefore not on all fours with this case, the Supreme Court's guidance that federalism principles require respect for the "interests and rights of the States in determining the development of watersheds within their borders and likewise their interests and rights in water utilization and control"[26] nonetheless is apt. The federal action here will have a result – acknowledged by USFWS – that works a material interference with fundamental state and regional water supply plans. NEPA does not require that USFWS obtain the consent of the state or regional planning authorities in order to establish the Refuge, of course; but it does require that an actually objective look be taken, and possible alternatives be considered, in respect of the competing state and regional water supply plans.

## **CONCLUSION**

NEPA requires that a "hard look" be taken at any federal action that may have a significant impact on the human environment. No such objective evaluation was made regarding the Neches Refuge proposal. This is not an instance where USFWS merely failed to have exhausted every de minimis consideration, or where the Plaintiffs' challenge attacks the merits of the decision to establish a refuge. Instead, the record reveals conscious disregard by USFWS for the consequences to state and regional water supply planning options, reliance on incomplete or outdated scientific evidence, failure to give adequate consideration to alternatives, and disregard for the criteria in USFWS' own regulations counseling a full EIS. Incompleteness at so pervasive a level cannot be said

---

[25] 438 U.S. at 678, 98 S.Ct. at 3002.

[26] 438 U.S. at 678, 98 S.Ct. at 3002.

9

to be objective or to respect principles of federalism and comity. USFWS failed or refused to consider all the relevant factors; that was a "clear error in judgment."[27]

The proposed Fastrill Reservoir project has tremendous importance to the State of Texas, the East Texas region, and the City of Dallas, among others, as part of a carefully-crafted state water supply plan for the future of its citizens   NEPA requires a more objective examination than appears to have been undertaken by USFWS; and, consistent with long-established principles of federalism and comity, the citizens of the State of Texas deserve better.  A full EIS is required.

Respectfully submitted,

SYDNEY W. FALK, JR.
Texas Bar No. 06795400
Bickerstaff Heath Delgado Acosta LLP
816 Congress Avenue, Suite 1700
Austin, Texas 78701
(512) 472-8021
(512) 320-5638  (facsimile)

   /s/  Sydney W. Falk, Jr.
Sydney W. Falk, Jr.

Counsel for the Texas Water Conservation Association

---

[27]  *See, e.g., Marsh v. Oregon Nat'l Res. Coun.*, 490 U.S. 360, 109 S.Ct. 1851, 1860 (1989).

# APPENDIX – TIME LINE OF EVENTS[28]

February 1961 – Fastrill Reservoir (precursor project of different name) identified as potential reservoir site by Upper Neches River Municipal Water Authority (UNRMWA) for Dallas-Ft. Worth metropolitan area. [AR1368; C0032]

**November 1984 – Texas Dept. of Water Resources publishes Water For Texas III Plan, identifying Fastrill project**; in state-wide statutory planning process.

1987 – FWS draft EA for Neches Refuge notes that it "could affect a potential water development project in the area" and acknowledges that potential project (now called Fastrill) is listed as a potential project in the 1984 Texas Water Plan. [AR0061]

Late 1980s – FWS Engineering Assessment Report acknowledges Fastrill. [AR0140]

1990 – FWS identified "potential conflict" between its refuge proposal and Fastrill. [AR2946] FWS also acknowledged its EA needed updating because some data was three years old. [AR2946] The refuge proposal is abandoned. [AR2948]

**2001 – Fastrill Reservoir designated in 2001 East Texas (Region I) Regional Water Plan.** [TWDB0084-133]

2001-02 – FWS resurrects the refuge proposal for the North Neches River Refuge. [TWDB0205]; and acknowledges a potential conflict with Texas resource planning to be an "immediate flashpoint." [AR0193]

October 11, 2001 – FWS aware of other possible sites for the proposed refuge [AR0185; AR0189]

February 2002 – FWS noted Middle Neches (not Upper Neches) was "one of the highest priorities in the state" and the "highest conservation priority in east Texas, if not in all of Texas . . .." [AR0272-73]

March 2002 – FWS strategy document identifies both Upper and Middle/South Neches as possible refuge locations. [AR0226-29]

June 2004 – Refuge plan made public. [AR0631]

June 2004 – USFWS correspondence identified Fastrill project and its conflict with the proposed refuge [AR0631; AR0668]

December 2004 – FWS status update indicates FWS knew Fastrill "would intersect with the proposed refuge." [AR0622]

---

[28] Derived substantially from the City of Dallas initial brief in support of its motion for partial summary judgment, and from the TWDB brief in response to USFWS' cross-motion for partial summary judgment.

11

February 2005 (pre-EA draft release for comment) – FWS then-Acting Regional Director Dale Hall acknowledged that "planning and approval" for Fastrill was "underway." [AR0574]

February 2005 (pre EA draft release for comment) – FWS employee email acknowledges that the two projects "overlap" and should be shown on the EA's maps; and acknowledges that "we knew about the dam proposal when we started our public scoping process last summer." [AR0608]

February 2005 (pre-EA draft release for comment) – FWS employee email acknowledges FWS "knew about the existence of the Fastrill proposal last July . . . ..Nonetheless, we have a charge to pursue . . . our proposal until someone higher up in FWS or DOI . . . tells us to stop." {AR0611]

**March 9, 2005 – Dallas City Council approves Fastrill for its long-range water supply.** [AR1899]

March 11, 2005 – FWS briefing statement is prepared recognizing "potential conflict" between Fastrill and Neches River National Wildlife Refuge [AR2962]

March 2005 – prior to release of Draft EA – Dale Hall (now FWS Director) instructs FWS employees how to discuss the Fastrill project to not be perceived as saying "no way" will it be possible. [AR0459]

Late March 2005 – new FWS Region 2 Director notes to local environmental group that FWS will preclude Fastrill: "by the time they get a study . . . completed, we will hopefully have received the director's approval." [AR1768]

**March 28, 2005 – FWS releases (draft) EA**, presenting two options for the North Neches River National Wildlife Refuge. [AR1164-1201] EA relied on data and studies most of which were 20 years old or older. [AR0030 (1985 land protection report for Texas and Oklahoma); AR1178-80 (vegetation study); AR2987 (outdated topographical data); AR1180-82 (animal species of concern, waterfowl, other birds, mammals, reptiles and amphibians, fish)] There is no discussion of the loss of Fastrill Reservoir as a possible water source. [AR1185] Acknowledges that the reservoir was proposed in the 1980s [AR1178]. Dismisses Fastrill as being beyond the "planning horizon for the refuge proposal." [AR1185] Concludes that any refuge considered in the EA "would prevent development" of Fastrill. [AR1194]

**May 17, 2005 - UNRMWA comments on EA,** specifically notes the probable loss of the Fastrill Reservoir project, and indicates its intent to work with USFWS to identify a way to satisfy both the refuge and State water supply goals. [AR1366-69]

**May 31, 2005 – Dallas comments on EA** and asks FWS to postpone the refuge proposal until certain Fastrill project studies are completed, and to work with the City and others to identify possible alternative refuge sites**.** [AR1344-45]

12

**July 28, 2005 – H. Dale Hall (then FWS Region 2 Director) approves EA Memorandum including a FONSI.** [AR1961-62]  Neither Memorandum nor FONSI discuss communications with the City, UNRMWA or the State regarding Fastrill.  Fastrill is dismissed as "speculative" [AR1965-66] because events more than 20 years out (beyond the planning horizon "for the proposed refuge" are considered per se outside NEPA review.  [AR1965]

**August 16, 2005 – Texas Senate passes SR 6,** identifying Fastrill as a "critical resource" for regional water supply.  [AR1811]

October 14, 2005 – Assistant Director, National Wildlife Refuge System, forwards FONSI to USFWS Director (now Dale Hall).

**January 2006 – Region I Water Plan** identifies Fastrill as "recommended water management strategy" for Dallas. [TWDB161]  TWDB approves Plan on May 16, 2006. [TWDB230-31, 236]

**January 2006 – Region C of the Water Planning Group (Dallas) issues water plan, including Fastrill Reservoir** [TWDB0238] and recommends it as a "unique site for reservoir development."  [TWDB0268-69, 0518, 0523-24]

**January 2006 – State's 2006 Water Plan** confirms that UNRMWA's plan to sponsor Fastrill is a "recommended water management strategy."  [TWDB 0161]

March 2006 – Fastrill Reservoir Preliminary Yield & Feasibility Study (draft) is produced.  [TWDB576-867]

April 3, 2006 – Dallas representatives meet with now-Director Hall.  FWS committed to consider alternative refuge sites and to participate in "teamed effort" with Dallas and the State to locate alternative refuge sites.  [AR2168, AR2147, TWDB0869-99]  Dallas provides draft "Fastrill Reservoir Preliminary Yield & Feasibility Study." (March 2006).  [TWDB0553]

April 20, 2006 – Dallas meets again with FWS to form a team to identify alternative refuge site.  [AR2155]

**April 2006 – TWDB approves the Region C Water Plan,** including Fastrill. TWDB0544.

May 10, 2006 – Dallas meets again with FWS to discuss potential alternative sites. [TWDB0554]

**May 16, 2006 – TWDB approves Region I Water Plan,** which includes Fastrill Reservoir project.  [TWDB230-31, 236]

13

May 2006 – Internal FWS communications reflect FWS had already decided against any alternative sites or any compromise with Dallas or the State [AR2029, AR2294, AR2191 (April 2006 email)]

May 2006 – FWS Acting Regional Director notes FWS has "not softened our position on the refuge . . . ." [AR2203]

**June 11, 2006 – FWS Director Hall approves the decision document (including the FONSI)** establishing refuge boundaries and authorizing acquisition of land. [AR1960-62, AR1967, 2972]

July 20, 2006 – FWS internal communication indicates FWS strategy is to quickly acquire land, even a small parcel, to "moot" any action by Dallas in opposition. [AR2466; *see also* AR2687 ("any interest in land . . . is still considered Federal ownership" and "cannot be removed except by act of Congress."); AR2714 (need to acquire land "asap")]

July – August 2006 – FWS rushes to acquire what is in the end merely a one-acre conservation easement within the refuge boundaries. [AR2466; *see* AR2461, AR2534-35, AR2592, Ar2819-20, AR 3012, Ar3025, AR3026-27] but keeps it secret. [Ar1884, Ar2718, FOIA0108, AR2592]

January 2007 – TWDB approves the 2007 State Water Plan, including Fastrill Reservoir. Complaint at ¶29.